1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    NICHOLAS KUSALICH,                      No.  2:20-CV-1863-DJC-DMC-P

12                     Plaintiff,

13           v.                               FINDINGS AND RECOMMENDATIONS

14    PEREZ, et al.,

15                     Defendants.

16

17           Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18    42 U.S.C. § 1983. Pending before the Court is Defendant Dudley's motion to dismiss, ECF No.

19    40.[1] Plaintiff has filed an opposition, ECF No. 43. Defendant Dudley has filed a reply, ECF No.

20    44.

21           In considering a motion to dismiss, the Court must accept all allegations of

22    material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The

23    Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer

24    v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S.

25    738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

26    _____

27           [1]      This motion to dismiss only pertains to the claims against Defendant Dudley.
      Defendants Albonico, De La Garza-Dillard, Furtado, Haskill, and J. Toubeaux, who are
      represented by separate counsel, have answered the complaint and filed a motion for summary
28    judgment.  Defendants Souza and Perez have not been served.

1

1    ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen,

2    395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual

3    factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

4    In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

5    See Haines v. Kerner, 404 U.S. 519, 520 (1972).

6            Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

7    of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair

8    notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp v. Twombly,

9    550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order

10   to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain

11   more than "a formulaic recitation of the elements of a cause of action;" it must contain factual

12   allegations sufficient "to raise a right to relief above the speculative level."  Id. at 555-56.  The

13   complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Id.  at

14   570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

15   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

16   Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but

17   it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting

18   Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a

19   defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement

20   to relief."  Id. (quoting Twombly, 550 U.S. at 557).

21           In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials

22   outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

23   Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1)

24   documents whose contents are alleged in or attached to the complaint and whose authenticity no

25   party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

26   and upon which the complaint necessarily relies, but which are not attached to the complaint, see

27   Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

28   of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

1 | 1994).

2 |         Further, leave to amend must be granted "[u]nless it is absolutely clear that no

3 | amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per

4 | curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

5 |         Finally, "the Supreme Court has instructed the federal courts to liberally construe the

6 | inartful pleading of pro se litigants. It is settled that the allegations of [a pro se litigant's complaint]

7 | however inartfully pleaded are held to less stringent standards than formal pleadings drafted by

8 | lawyers." See Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) (citation and internal quotation

9 | marks omitted; brackets in original). The rule, however, "applies only to a plaintiff's factual

10 | allegations." See Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "'[A] liberal interpretation of a

11 | civil rights complaint may not supply essential elements of the claim that were not initially pled.'"

12 | See Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of

13 | Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

14 |

15 |                                    **I. BACKGROUND**

16 |         This action proceeds on Plaintiff's First Amended Complaint (FAC). Plaintiff

17 | names the following as defendants: (1) Warden Perez; (2) Arthur Dudley; (3) Correctional Officer

18 | Souza; (4) Correctional Captain N. Albonico; (5) Correctional Counselor M. De La Garza-

19 | Dillard; (6) Correctional Counselor Furtado; (7) Correctional Officer Haskill; and (8) J.

20 | Toubeaux. Plaintiff also lists five DOE Defendants. See ECF No. 13, pgs. 3-4. DOE Defendants

21 | 1-3 are described as other inmates at High Desert State Prison (HDSP). See id. Plaintiff identifies

22 | DOE Defendants 1-3 by pseudonyms as followed: (1) "Little Ricky"; (2) "Tiny's cellie"; and (3)

23 | "Tiny." See id. DOE Defendant 4 is an unnamed Probation Officer employed by the County of

24 | Santa Cruz, and DOE Defendant 5 is an unnamed Courtroom Clerk employed by the County of

25 | Santa Cruz. See id. Plaintiff alleged the same three claims for relief in his FAC. See id. at 9-11.

26 | All defendants, except DOE Defendants 1-3, are sued in both their official and individual

27 | capacities. See id. at 2-4.

28 | / / /

1      In 1995, Plaintiff was convicted by a jury on four counts of forcible child

2  molestation (Penal Code §288(b)), and one count of dissuading a witness from reporting a crime

3  (Penal Code §136.1(b)(1)). See ECF No. 13, pg. 4. Plaintiff alleges that one year later, "the Court

4  of appeal reversed the judgment in its entirety based on ineffective assistance of counsel." See id.

5  Plaintiff further contends that the "prosecution elected not to refile charges." See id. In 2014,

6  Plaintiff was convicted of first-degree murder and sentenced to a term of thirty-one years to life in

7  state prison. See id. Before entering HDSP, Plaintiff "went through the reception center" at San

8  Quentin State Prison, where he "briefly encountered questions regarding his alleged prior." See

9  id. at 5. Because of this, Plaintiff wrote to his daughter and asked her to contact his lawyer,

10  Defendant Dudley. See id.

11      Plaintiff alleges that shortly after he arrived at HDSP, on or about February 3,

12  2015, he was approached by an inmate ("DOE #1"), who asked Plaintiff "why his paper work

13  [those documents showing why a person was in prison] was not posted on the locker." See id.

14  Plaintiff contends that the "common practice at HDSP was for all prisoners to tape a copy of their

15  paper work at the end of the locker at the cell door's window." See id. Plaintiff states that he told

16  DOE #1 that he was in for murder and that his paperwork was "all good." See id. Plaintiff alleges

17  that he later "witnessed DOE #1 and DOE #2 approach the correctional officer's building office,

18  engage both defendants Haskel and Souza in a conversation" and saw "Haskel turn[] the

19  computer screen so that both DOE #1 and DOE #2 . . . could see the screen." See id.

20      Plaintiff states that on or about February 4, 2015, "Defendant Dudley wrote the

21  plaintiff, advised him that his daughter had called and relayed that he (Dudley) would do what he

22  could to resolve the questions regarding the plaintiff's alleged prior sex crimes." See id. at 6.

23  Plaintiff claims that Defendant Dudley "ought to have known the dangers such rumors would

24  place his client in and had a fiduciary duty, as an officer of the court, to take whatever action

25  necessary to protect the plaintiff from harm that could lead to great bodily harm or even death."

26  See id.

27  / / /

28  / / /

4

1       Plaintiff alleges that on or about February 11, 2015, Plaintiff appeared before the

2   Unit Classification Committee (UCC) which determined that a "special classification for 'SEX'

3   was appropriate [for Plaintiff] and that he was required to register [as a sex offender] per PC

4   290." See id. at 7. This meant that Plaintiff's inmate number would include the suffix "R," which

5   was known to prison staff and inmates as a designation applied to sex offenders. See id. at 8-9.

6   Afterward, Plaintiff was released to the general population at HDSP. See id. at 7. Plaintiff

7   contends that "he was assaulted by DOE #1 and DOE #2 at the direct orders of DOE #3 on or

8   about February 18, 2015. See id. Plaintiff was treated for injuries and then taken to administrative

9   segregation for his protection. See id.

10      Plaintiff next contends that on or about February 25, 2015, he appeared before the

11  Institutional Classification Unit (ICU). See id. at 8. At this appearance, Plaintiff "informed [the

12  ICU] that he was not required to register as a sex offender because he was not a sex offender."

13  See id. Plaintiff alleges that Defendant Perez refused to "correct [the] paperwork . . . saying

14  words to the effective 'it is what it is.'" See id. Defendant Perez told Plaintiff that he "would be in

15  the hole a long time unless" Plaintiff signed a sensitive- needs yard (SNY) chrono, which Plaintiff

16  did. See id.

17      Plaintiff states that on or about June 25, 2015, the Office of the Inspector General

18  (OIG) was authorized by the Senate Committee on Rules to conduct an evaluation of the practices

19  at HDSP. See id. The OIG report established that:

20              [I]nmates with a history of sex offenses are designated with an R suffix
               which follows the inmates for every subsequent incarceration, . . .
21              regardless of an inmate's current commitment offense, if that inmate is
               required to register as a sex offender, pursuant to PC section 290, for any
22              offense committed in his lifetime, an R suffix is applied . . . allegations
               were raised related to staff disclosing the commitment of offense of
23              inmates to other inmates, placing their safety at risk . . . [S]taff told
               inmates that other inmates were sex offenders, or had shown the
24              classification documents or let them view the electronic inmate records
               retained in the Strategic Offender Management System (SOMS), showing
25              that an inmate had an R suffix. Having an R suffix carries a major stigma
               in prison and can jeopardize an inmate's safety by setting the inmate up
26              for assault or extortion for protection from assault. Many of the specific
               instances of misconduct of the pervasive indifferent treatment of inmates
27

28  / / /

5

can be narrowed down to a small percentage of active participants, many of whom are currently under investigation.

See id. at 8-9.

## II. DISCUSSION

Plaintiff alleges three causes of action: (1) "Violation of Eighth Amendment: Failure to Protect"; (2) "Personal Injury: Negligence"; and (3) Intentional Infliction of Emotional Distress. In his motion to dismiss, Defendant Dudley argues that each claim must fail because (1) Plaintiff cannot prevail on his Eighth Amendment claim because Plaintiff establish that Dudley was a state actor; (2) Plaintiff fails to plead sufficient facts to establish either state law claim; and (3) Plaintiff's claims are time-barred.

A.      **Failure to State a Claim**

1.      Section 1983 Claim

"[I]n any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of right, privileges, or immunities secured by the constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 537 (1981). The Supreme Court has concluded that the statutory requirement of action "under the color of state law" is identical to the "state action" requirement of the Fourteenth Amendment. See Lugar v. Edmonson Oil Co., Inc., 457 U.S. 922, 929 (1982). Action "under the color of state law" is the "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." U.S. v. Classic, 313 U.S. 299, 326 (1941). Therefore, conduct allegedly causing a deprivation of a federal right must be "fairly attributable to the State." See Lugar, 451 U.S. at 937.

/ / /

/ / /

/ / /

6

1         The Supreme Court has set forth a two-prong test to determine whether an action

2 is fairly attributable to the State: (1) "the deprivation must be caused by the exercise of some right

3 or privilege created by the State or by a rule of conduct imposed by the state or by a person for

4 whom the state is responsible"; and (2) "the party charged with the deprivation may be a person

5 who may fairly be said to be a state actor." Id.

6         "[T]o act 'under color of' state law for § 1983 purposes does not require that the

7 defendant be an officer of the State." Dennis v. Sparks, 449 U.S. 24, 27 (1980). However, there is

8 a "presumption that private conduct does not constitute governmental action." Sutton v.

9 Providence St. Joseph Med. Ctr., 192 F.3d 826, 835 (1999). Courts have used four tests to

10 determine whether a private party may be characterized as a "state actor." First, the "public

11 function" test. Id. at 835-836. "Under the public function test, when private individuals or groups

12 are endowed by the State with powers or functions governmental in nature, they become agencies

13 or instrumentalities of the State and subject to its constitutional limitations." Lee v. Katz, 276

14 F.3d 550, 554-555 (9th Cir. 2002). The function must "be both traditionally and exclusively

15 governmental." Id.

16         Next, there is the "state compulsion" test, which states that "the government

17 cannot escape liability when it compels a result, even though the government does not actually

18 engage in the unlawful act but, instead, pressures another to do so." Sutton, 192 F.3d at 838.

19 However, in cases involving private defendants, "the mere fact that the government compelled a

20 result does not suggest that the government's action is 'fairly attributable' to the defendant." Id.

21         The third test courts have used is the "nexus" test where "state action may be

22 found if, though only if, there is such a 'close nexus between the State and the challenged action'

23 that seemingly private behavior 'may be fairly treated as that of the State itself.'" Brentwood

24 Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001) (quoting Jackson v.

25 Metropolitan Edison Co., 419 U.S. 345, 351 (1974)).

26 / / /

27 / / /

28 / / /

7

Finally, there is the "joint action" test. Under this final test, a Court considers "whether the state has 'so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity.'" <u>Gorenc v. Salt River Project Agr. Imp. And Power Dist.</u>, 869 F.2d 503, 507 (1989). This happens when "the state knowingly accepts the benefits derived from unconstitutional behavior." <u>Id.</u> "A private person is liable under this theory, however, only if the particular action challenged are inextricably intertwined with those of the government." <u>Mathis v. Pacific Gas and Elec. Co.</u>, 75 F.3d 498, 503 (9th Cir. 1996).

Plaintiff's first cause of action is for violation of his civil rights under the Eighth Amendment. Plaintiff incorporates this claim against all defendants, including Defendant Dudley:

> The actions of defendants complained herein are brought pursuant to 42 U.S.C. § 1983 and constitute a violation of the Eighth Amendment to the United States Constitution. Defendant's policies, practices, acts and omissions demonstrate their deliberate indifference to the plaintiff's fundamental constitutional right to be free of assault by other prisoners, particularly when that assault is the result of their negligent act. Plaintiff was harmed, thereby, in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

> ECF No. 13, pgs. 9-10.

Defendant Dudley argues that Plaintiff's § 1983 claim against him must fail because Plaintiff cannot plead sufficient facts to show that Defendant Dudley acted under color of state law. <u>See</u> ECF No. 40-1, pg. 12. Defendant addresses the four tests for determining if a private party was acting under color of state law.  For the reasons discussed below, the Court finds that Plaintiff has not alleged facts to show that Dudley was acting under color of state law.

a.    <u>Public Function Test</u>

First, Defendant Dudley argues that he cannot be considered a state actor under the public function test. Defendant points to <u>Polk County v. Dodson</u>, 454 U.S. 312 (1981), in support of this contention. The Court in <u>Polk County</u> concluded that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." <u>Id.</u> at 325. The Court reasoned that defense lawyers best serve the public, "not by acting on behalf of the State or in concert with it, but rather by advancing 'the undivided

8

1   interest of his client.' This is essentially a private function, traditionally filled by retained counsel,

2   for which state office and authority are not needed." Id. at 318-319. The Court explained that

3   although the employment relationship was a factor, public defenders serve as adversaries to the

4   State and, generally, do not constitute state actors. See id. at 320.

5          The Court agrees that Defendant Dudley was not a "state actor" under the public

6   function test. Defendant Dudley is an attorney in private practice. See ECF No. 40-2. Plaintiff has

7   not alleged any facts to show that Defendant Dudley was "endowed by the State with powers or

8   functions that are governmental in nature." Furthermore, the Court must presume that private

9   conduct does not constitute governmental action. Plaintiff, in his opposition, contends that

10  Defendant Dudley constitutes a state actor because Defendant Dudley "was appointed by that

11  Superior Court to represent the plaintiff as an Alternative Public Defender and not as 'an attorney

12  in private practice.'" ECF No. 43, pg. 1. This fact would make the circumstances here nearly

13  indistinguishable from that of Polk County. Here, Defendant Dudley serves the same "private

14  function, . . . for which state office and authority are not needed." Polk County, 454 U.S. at 319.

                                    b.      Joint Action Test

16         Defendant next addresses the joint action test. Defendant contends that "there are

17  no allegations or any indication that the state insinuated itself into a position of interdependence."

18  ECF No. 40-1, pg. 15. The Court agrees. Plaintiff fails to show what if any benefit the State

19  received from Defendant Dudley's alleged unconstitutional behavior. Plaintiff does not allege

20  facts that show Defendant Dudley was in fact engaged in unconstitutional behavior. Rather,

21  Plaintiff makes a broad statement that Defendant Dudley "had a fiduciary duty . . . to take

22  whatever action necessary to protect the plaintiff from harm," but does not describe what exact

23  Defendant Dudley did or failed to do to support this allegation. See ECF No. 13, pg. 6. Plaintiff

24  also does not provide facts to show that Defendant Dudley's alleged unconstitutional behavior is

25  "inextricably intertwined" with the State. Without facts to support the idea that the government

26  knowingly benefited from Defendant Dudley's alleged unconstitutional acts, the Court cannot

27  find that Defendant Dudley was acting under color of state law.

28  / / /

c.    Nexus Test

Defendant next contends that Plaintiff cannot establish the requisite nexus between Defendant Dudley's actions and the State. See ECF No, 40-1, pg.16-17. The Court agrees. Plaintiff does not allege facts sufficient to show any connection between he actions of Defendant Dudley and any government entity or official. Plaintiff states in his opposition that Defendant Dudley was appointed to represent the Plaintiff as an Alternative Public Defender. However, this is not sufficient, in and of itself, to show the requisite nexus between Defendant Dudley and the State.

d.    State Compulsion Test

Defendant addressed the state compulsion test last. See id. at pg. 17. Defendant contends that Plaintiff cannot establish that Defendant Dudley was coerced by the State. Similar to the reasoning stated above, the Court agrees. Plaintiff fails to allege facts to show any fact establishing that the State coerced, compelled, or influenced Defendant Dudley to act or refrain from acting.

2.    Negligence

Plaintiff alleges in his FAC that Defendant Dudley "failed to use care a reasonably prudent and careful attorney at law would have used under similar circumstances as depicted herein, and thus the plaintiff was harmed by his negligence behavior and or omissions." ECF. No. 13, pg. 10. This claim is entitled "Personal Injury: Negligence." See id. Defendant argues that this is a claim for professional negligence. See ECF No. 40-1, pg. 18. In his Opposition, Plaintiff responds and states that this is a claim for "general negligence," *not* "professional negligence." See ECF No. 43, pg. 5. The argument about the classification of this claim is practically irrelevant. There is no conceptual distinction between "ordinary negligence" and "professional negligence." See Flowers v. Torrance Memorial Hospital Medical Center, 8 Cal.4th 992, 996-997 (1994).

> Negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm. Thus, as a general proposition one is required to exercise the care that a person of ordinary prudence would exercise under the circumstances. Because application of this principle is inherently situational, the amount of care

deemed reasonable in any particular case will vary, while at the same time the standard of conduct remains constant, i.e., due care commensurate with the risk posed by the conduct taking into consideration all relevant circumstances.

Id. at 997 (citations and quotation marks omitted).

In other words, professionals' "specialized education and training do not serve to impose an increased duty of care but rather are considered additional 'circumstances' relevant to an overall assessment of what constitutes 'ordinary prudence' in a particular situation." Id. at 997-998. "In its ordinary sense, 'professional negligence' is failure to exercise 'knowledge, skill, and care ordinarily employed by members of the profession in good standing.'" Covenant Care, Inc. v. Superior Court, 32 Cal.4th 711, 781 (2004). To prevail on his claim, Plaintiff must show: "(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; (4) actual loss or damage resulting from the attorney's negligence." Namikas v. Miller, 225 Cal.App.4th 1574, 1581 (2014).

Plaintiff states the following in reference to Defendant Dudley's alleged negligence:

On or about February 4, 2015, Defendant Dudley wrote the plaintiff, advised him that his daughter had called and relied that he would do what he could to resolve the questions regarding the plaintiff's alleged prior sex crime.

Defendant Dudley failed to use care as a reasonably prudent and careful attorney at law would have used under similar circumstances depicted herein, and those the plaintiff was harmed by his negligence behavior and or omissions.

ECF No. 13, pgs. 6, 10.

Defendant argues: (1) Plaintiff failed to plead facts to show that a duty was owed after the conclusion of the trial in which Defendant Dudley represented Plaintiff; (2) even if there was a duty, there was no breach because the "problems encountered by Plaintiff are systemic within the Department of Corrections and *do not allow* for intervention by inmate's attorneys"; and (3) Defendant Dudley was not the proximate cause of Plaintiff's injuries, as he was not responsible for disclosing Plaintiff's classification to other inmates. See ECF No. 40-1, pgs. 18-

1    20.

2         The Court agrees. Plaintiff does not allege sufficient facts to make his negligence

3    claim plausible.  Nor can he.  As Defendant Dudley notes, even if there is a duty owed to

4    Plaintiff, Plaintiff's negligence claim necessarily fails as against Dudley because Dudley was not

5    responsible for disclosing Plaintiff's classification.  To the contrary, the allegations in the FAC

6    make clear that other defendants are alleged to be responsible for disclosing his classification, not

7    Dudley.  Plaintiff's negligence claim against Defendant Dudley should be dismissed without

8    leave to amend.

9              3.      Intentional Infliction of Emotional Distress

10        Plaintiff's third claim is for intentional infliction of emotional distress. In order to

11   adequately plead this claim, Plaintiff must allege: "(1) extreme and outrageous conduct by the

12   defendant with the intention of causing, or reckless disregard of the probability of causing,

13   emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3)

14   actual and proximate causation of the emotional distress by the defendant's outrageous conduct."

15   Hughes v. Pair, 46 Cal.4th 1035, 1050 (2009).  A defendant's conduct is outrageous when it is so

16   "extreme as to exceed all bounds of that usually tolerated in a civilized community."  Barker v.

17   Fox & Assoc., 240 Cal.App.4th 333, 355 (2015).  The emotional distress suffered must be severe

18   and not trivial or transient.  See Fletcher v. Western National Life Insurance Company, 10

19   Cal.App.3d 376, 396-7 (1970).  It is distress of such substantial and enduring quality that no

20   reasonable person in civilized society should be expected to endure it.  See Potter v. Firestone

21   Tire & Rubber Co., 6 Cal.4th 965, 1004 (1993).

22        Plaintiff alleges that Defendant Dudley "deliberately acted in such a manner as to

23   cause the plaintiff to be assaulted, resulting in extreme and outrageous infliction of great bodily

24   harm on his person and that intentional and or reckless disregard caused emotional distress and

25   mental anguish to be inflicted upon the plaintiff as a result of defendant Dudley's acts or

26   omissions." ECF No. 13, pg. 11. Defendant argues that Plaintiff has failed to plead facts sufficient

27   to state a claim for emotional distress. See ECF No. 40-1, pg. 21-22. The Court agrees. Plaintiff's

28   conclusory allegations do not suggest that the emotional distress and mental anguish he suffered

                                                    12

1     as a result of being assaulted was of a substantial and enduring quality as to go beyond the

2     expectations of civilized society.  Nor has Plaintiff alleged that Dudley's conduct was so

3     outrageous as would exceed the bounds of that which is tolerated.  Finally, Plaintiff has not

4     alleged facts to suggest that Defendant Dudley acted intentionally for the purpose of causing

5     Plaintiff severe emotional distress or suffering.  Plaintiff's intentional infliction of emotional

6     distress claim against Dudley should be dismissed without leave to amend.

7            **B.**     **Statute of Limitations**

8            Defendant Dudley also argues that Plaintiff's claims are all time-barred by the

9     applicable statutes of limitations.[2]

10            1.     Section 1983 Claim

11            For claims brought under 42 U.S.C. § 1983, the applicable statute of limitations is

12     California's statute of limitations for personal injury actions.  See Wallace v. Kato, 549 U.S. 384,

13     387-88 (2007); Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) ("[f]or actions under 42 U.S.C.

14     § 1983, courts apply the forum state's statute of limitations for personal injury actions."); Jackson

15     v. Barnes, 749 F.3d 755, 761 (9th Cir. 2014); Wilson v. Garcia, 471 U.S. 261, 280 (1985); Karim-

16     Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).  In California, there is a

17     two-year statute of limitations for personal injury actions such as § 1983 cases.  See Cal. Civ.

18     Proc. Code § 335.1; Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004).

19            State tolling statutes also apply to § 1983 actions.  See Hardin v. Straub, 490 U.S.

20     536, 543-44 (1998).  California Civil Procedure Code § 352.1(a) provides tolling of the statute of

21     limitations for two years when the plaintiff is, at the time the cause of action accrued, an inmate

22     serving less than a life sentence.  See Cal. Code. Civ. P. 352.1(a).  This tolling provision applies

23     to all inmates except those sentenced to life without the possibility of parole.  See Brooks v.

24     Mercy Hospital, 204 Cal. Rptr.3d 289, 291-92 (Cal. App. 2016) (holding § 352.1(a) is applicable

25     to prisoners serving a sentence of life with the possibility of parole, but the statutory language

26     excludes those sentenced to life without the possibility of parole).  Thus, unless an inmate is

27

28          [2]     Defendants Furtado, De La Garza-Dillard, Albonico, Toubeaux, and Haskill also raise the statute limitations in their motion for summary judgment.

serving a sentence of life without the possibility of parole, a four-year limitation period applies. State tolling is also available for the time an inmate is exhausting the administrative grievance process. See Soto v. Unknown Sweetman, 883 F3d 865, 871 (9th Cir. 2018).

Notwithstanding the application of the forum's state law regarding the statute of limitations, including statutory and equitable tolling, in the context of a § 1983 action, it is "federal law" which "governs when a claim accrues." Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999) (citing Elliott v. City of Union City, 25 F.3d 800, 801-02 (9th Cir.1994)). "A claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of action." Id. (citing Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir. 1996)); see also TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999).

Defendant argues that "Plaintiff knew of the injury which is the basis of his Complaint when he was assaulted on February 18, 2015," but "delayed over five years in filing his original Complaint." See ECF No. 40-1, pg. 18. Plaintiff filed his original Complaint on September 15, 2020. See ECF No. 1. Therefore, applying a four-year limitations period, the time to commence this action expired on February 18, 2019, and Plaintiff's original complaint was filed a year and seven months after this date. Plaintiff's Eighth Amendment claim against Dudley is time-barred and must be dismissed.

### 2. State Law Claims

Defendant argues that the negligence claim, and the intentional infliction of emotional distress claims are also time-barred, stating that the claims have a one-year and two-year statute of limitations, respectively. See ECF No. 40-1, pgs. 21, 22.

#### a. Negligence

California Code of Civil Procedure § 340.6, which governs claims for negligence against attorneys states:

> An action against an attorney for a wrongful act or omission, other than actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful

/ / /

14

act or omission, whichever comes first.

Cal. Code of Civil Procedure § 340.6.

The Court agrees with Defendant Dudley that Plaintiff's negligence claim is time-barred.  According to the FAC, the events giving rise to Plaintiff's claims occurred in February 2015.  Even if the Court were to give Plaintiff the benefit of statutory tolling for two years to account for his incarceration, this action was commenced in September 2020, which over one year after both February 2015 and February 2017.  Plaintiff's negligence claim against Defendant Dudley is time-barred and must be dismissed.

b.     <u>Intentional Infliction of Emotional Distress</u>

California Code of Civil Procedure § 335.1 governs Plaintiff's intentional infliction of emotional distress claim, and states that an action must be filed within two years of accrual of the claim.   Again, even with two years statutory tolling given Plaintiff's status as an inmate, the action was commenced in September 2020, which is more than two years after both February 2015 and February 2017.  Plaintiff's claim for intentional infliction of emotional distress is also time-barred and must be dismissed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

15

1

### III. CONCLUSION

2          Based on the foregoing, the undersigned recommends as follows:

3          1.         Defendant Dudley's motion to dismiss, ECF No. 40, be GRANTED.

4          2.         Plaintiff's claims against Dudley be dismissed without leave to amend and

5 Dudley be terminated as a defendant to this action.

6          These findings and recommendations are submitted to the United States District

7 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

8 after being served with these findings and recommendations, any party may file written objections

9 with the Court.  Responses to objections shall be filed within 14 days after service of objections.

10 Failure to file objections within the specified time may waive the right to appeal.  See Martinez v.

11 Ylst, 951 F.2d 1153 (9th Cir. 1991).

12

13 Dated:  July 14, 2023

14

DENNIS M. COTA

15 UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28